**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| LINDA L. BATTS | * | |
| Plaintiffs, | * | |
| v. | * | |
| MAYOR AND CITY COUNCIL OF BALTIMORE, *ET AL.* | * | Civil Action No.: 1:26-cv-00467-JMC |
| | * | |
| Defendants. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants Mayor and City Council of Baltimore ("Mayor and City Council") and Baltimore City Department of Public Works ("DPW") (collectively, the "Defendants"), by their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss filed in the captioned action.

## I.    BACKGROUND.

Central to this dispute are allegations of unlawful employment practices brought by Linda L. Batts ("Plaintiff") against Defendants arising from her employment with the City of Baltimore while assigned to DPW. *See* ECF 1. Specifically, Plaintiff alleges that Defendants violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000*e et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), and the Maryland Fair Employment Practices Act, Md. Code Ann., St. Gov't, § 20-601 *et seq.* ECF 6, ⁋ 1.

According to Plaintiff, she is "a highly experienced Black female professional over the age of 60" who served as the "first-ever Director of Equity and Environmental Justice for DPW." *Id.*,

P 2.  Plaintiff further asserts that "[r]ather than supporting her mandate to root out discrimination, DPW leadership obstructed her efforts, engaged in flagrant discriminatory practices against Black and female employees, and ultimately terminated [her] in retaliation" for fiercely opposing unlawful employment practices.  *Id*., P 3.

As relief, Plaintiff seeks: (a) declaratory relief; (b) back pay; (c) front pay; (d) compensatory damages; (e) punitive damages; (f) attorney's fees and costs; and (j) "such other and further relief as the Court deems just and proper."  *Id*. at 15.  Plaintiff demands a trial by a jury.  *Id*.

As discussed herein, Plaintiff fails to state a claim upon which relief may be granted, warranting dismissal of the Complaint in its entirety, with prejudice.

## II.     PROCEDURAL HISTORY.[1]

On February 28, 2022, Plaintiff filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") in which she asserted claims of discrimination and retaliation against DPW under Title VII and the ADEA.  *See* **Exhibit 1**; ECF 1, P 13.  On November 29, 2024, the EEOC issued a Letter of Determination and invited the parties to engage in conciliation.  *See* **Exhibit 2**; ECF 1, P 14.

On February 25, 2025, the EEOC notified the parties that conciliation efforts were unsuccessful and that the matter had been referred to the Department of Justice ("DOJ") for litigation review.  *See* **Exhibit 3**; ECF 1, P 20.  On May 7, 2025, the DOJ issued a 90-day notice of right to sue ("NRTS").  **Exhibit 4**.  Plaintiff initiated this action on February 2, 2026. ECF 1.

Defendants now move to dismiss the Complaint in its entirety, with prejudice.

---

[1]  Defendants have attached **Exhibits 1-4** for this Court's consideration without the need to convert their motion to dismiss into a motion for summary judgment.  *See Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 415 (D. Md. 2024) (citing *Goldfarb v. Mayor & City Council of Balt*., 791 F.3d 500, 508 (4th Cir. 2015)) ("[W]hen resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.").

### III.    STANDARD OF REVIEW.

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Presley v. City of Charlottsville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A complaint need only satisfy the standard of Rule 8(a), requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3, 127 S. Ct. 1955 (2007).  That showing must amount to more than the mere "formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

At this stage of the litigation, a reviewing court must accept as true all well-pleaded allegations in a complaint, *Albright v. Oliver*, 510 U.S. 266, 268, 114 S. Ct. 807 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  While the court must assume the factual allegations in a complaint are true, it need not assume that a plaintiff "can prove facts that [are] not alleged or that the defendants have violated the . . . law [ ] in ways that have not been alleged." *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (quoting *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983)). Unsupported legal allegations need not be accepted.  *Revene v. Charles Cnty. Comm'rs*. 882 F.2d 870, 873 (4th Cir. 1989).

Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 605 F.2d 844, 847 (4th Cir. 1979).  A claim must relate facts that "raise a

right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (event if doubtful in fact)." *Twombly*, 550 U.S. at 556 n.3.  The legal framework of the complaint must be supported by factual allegations that nudges the plaintiff's "claims across the line from conceivable to plausible." *Id*. at 570.

"[W]hile a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Swierkeiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15, 122 S.Ct. 992 (2002); *Twombly*, 550 U.S. at 555. Ultimately, a complaint must "'permit[ ] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

## IV.    ARGUMENT.

### A.  THE COMPLAINT SHOULD BE DISMISSED AS UNTIMELY.

It is well settled that a person alleging claims under Title VII must file a lawsuit within 90 days of receipt of a right to sue notice ("NRTS"). 42 U.S.C. § 2000*e*-5(f)(1).   The 90-day limitations period is strictly enforced.  *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *see also Moulden v. Tangherlini*, RDB-14-3506, 2015 WL 8757609, at *2 (D. Md. Dec. 15, 2015) ("Courts strictly enforce the ninety day filing requirement, even if the plaintiff is pro se."); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987) (dismissing as untimely a lawsuit filed 92 days following receipt of the NRTS).

Similarly, a person alleging claims under the ADEA must file suit within 90 days of receipt of the NRTS or the action will be untimely and the right to pursue such claims forfeited.  *Fisher v. Maryland Dep't of Hous. & Community Dev.*, 32 F. Supp.2d 257, 264 (D. Md. 1998)(finding that a plaintiff is required to bring an action under the ADEA within 90 days after receipt of the

NRTS and that failure to file suit within 90 days renders the action untimely); *see also Howard v. United Sates Army*, 307 Fed. Appx. 765 (4th Cir. 2009)(affirming dismissal of ADEA claims with prejudice for a plaintiff's failure to file within the 90-day statutory deadline).

"The ninety-day period begins to run on the date that a complainant receives her or his right to sue notice." *Davis v. Virginia Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999); *see also Harvey v. City of New Bern Police Dep't, supra.* "An electronic right-to-sue letter sent by email is deemed received by the claimant—thus triggering the 90-day filing deadline—when the email and letter arrive in the claimant's inbox." *Jacobs v. Walmart Inc.*, Civil Action No. RDB-22-2666, 2023 WL 4532822, at *8 (D. Md. July 13, 2023).

In reaching its decision, the *Jacobs* Court explained that "[w]hen notice is sent over email, innumerable factors within the claimant's exclusive control could lead to unpredictable and extended delays. A claimant may not open their email client for days, weeks, or months, and an individual email could be overlooked, deleted, or filtered into folders designated for spam, junk, or solicitation." *Id*. at *6. The Court further cautioned against "actual notice" being the standard when determining the date on which an electronic NRTS is received and emphasized that "[e]xpecting the claimant to diligently read her email and stay apprised of messages from the EEOC is more consistent with Congress's intent that Title VII claimants 'act expeditiously' and exercise their rights 'without unnecessary delay.'" *Id*. (internal citations omitted).

The DOJ issued the NRTS on May 7, 2025.[2]  Plaintiff received the NRTS when it was delivered to her email account that same day.[3]  Plaintiff had 90 days from that date – until August

---

[2] *See* **Exhibit 4**.

[3] Plaintiff's assertion that she "initiated this lawsuit as soon as practicable upon obtaining actual notice" (ECF 1, ⁋ 28) is of no moment.  *See Jacobs v. Walmart Inc.*, 2023 WL 4532822 at * 6 (cautioning against actual notice being the standard when determining the date on which an electronic NRTS is received).

5, 2025 – by which to timely file suit. She did not initiate this action until February 2, 2026 – *i.e.*, 274 days after receiving the NRTS and 184 days beyond the 90-day filing deadline. Plaintiff forfeited her right to pursue the claims delineated in the Charge because she failed to meet the filing deadline. Moreover, the rarely applied exception of equitable tolling is inapplicable.

Concerning the equitable tolling, the *Jacobs* Court explained that:

The doctrine of equitable tolling is available in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)). To receive equitable tolling, an otherwise time-barred plaintiff must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (quoting *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)).

*Jacobs v. Walmart Inc.*, 2023 WL 4532822 at * 6.

Without question, the ability to monitor her email inbox rested solely with Plaintiff. That she infrequently monitored her email inbox was not a circumstance external to Plaintiff's ability to act. Instead, her failure to monitor her email inbox demonstrates Plaintiff's lack of diligence in pursing her claims. Additionally, Plaintiff alleged no extraordinary circumstances which stood in the way to prevent her from timely filing the Complaint. Absent a showing of diligence in pursuing her claims along with extraordinary circumstances that prevented Plaintiff from acting, equitable tolling should not be applied to save the untimely Complaint.

Plaintiff's belated awareness that the NRTS issued on May 7, 2025 was entirely self-inflicted. Her inexcusable neglect in monitoring her email inbox resulted in Plaintiff's delayed discovery of the NRTS. Plaintiff's failure to exercise diligence in monitoring her email inbox does not justify equitable tolling. Furthermore, the Complaint contains no facts demonstrating extraordinary circumstances that stood in Plaintiff's way or prevented her from acting. The

6

principles of equitable tolling do not extend to what is best described as a garden variety claim of excusable neglect. *Irwin v. Dep't of Veteran Affairs, et al.*, 498 U.S. 89, 96, 111 S.Ct. 453 (1991).

Plaintiff contends that an "agency error and misinformation" resulted in her failure to timely initiate suit. *See* ECF 1, ¶ 28. Plaintiff's suggestion that the rarely applied exception of equitable tolling should save her untimely Complaint is misguided and should be disregarded.

Plaintiff readily acknowledges that LindaBatts1008@gmail.com is her "lesser used [email] account," one that "she did not check . . . as often." *Id*., ¶¶ 15, 22. Notwithstanding that fact, she nonetheless contends that her communications with an EEOC representative about using "her preferred email address" (*id.,* ¶ 16) or "better email" (*id.*) effectively "ratified and confirmed the removal of a Gmail account." ECF 1, ¶ 15. Such proposition is unavailing.

As an initial matter, Plaintiff does not allege that anything prevented her from monitoring her less frequently used email inbox to learn of new developments concerning her claims once the matter was referred to the DOJ. Additionally, the Complaint is devoid of factual allegations that Plaintiff's email inbox was inoperable. Moreover, the Complaint contains no facts which suggest that any circumstances external to Plaintiff prevented her from accessing her email inbox. Plainly put, Plaintiff was on notice of the NRTS on May 7, 2025, but she failed to act in a timely manner.

Secondly, Plaintiff had an affirmative duty to update her contact information in the EEOC Public Portal. The EEOC expressly notes on its website that it is incumbent upon a complainant to update their contact information in the EEOC Public Portal. *See What You Can Expect After You File a Charge | U.S. Equal Employment Opportunity Commission* (last accessed April 7, 2026) (noting that "EEOC's Public Portal allows you to [u]pdate your contact information – *It's important that your contact information is current and accurate*.") (emphasis supplied). Inexplicably, Plaintiff failed to update her contact information in the portal. Despite Plaintiff's

contention to the contrary, her communications with an EEOC representative about her infrequently monitored email inbox did not alleviate Plaintiff of her duty to update her contact information – including her email account – in the portal.

Whether she neglected to monitor her email inbox or update her contact information in the EEOC portal, Plaintiff failed to pursue her rights diligently.  Rather than take responsibility for her failings, Plaintiff seeks to shift responsibility to an EEOC investigator.  Despite her misplaced blame, Plaintiff's communication with an EEOC representative did not relieve her of her obligation to update her contact information in the portal.  Importantly, she was not relieved of her responsibility to monitor her own email inbox.

Not only did Plaintiff neglect to monitor her email inbox and further failed to update her contact information in the EEOC portal, but she failed to contact the DOJ to inquire about the status of its litigation review of her claims.  Even Plaintiff acknowledges that the DOJ had undertaken litigation review of her claims as of February 25, 2025.  *See* ECF 1, ¶ 20; **Exhibit 3**. She never contacted the DOJ.  Had Plaintiff contacted the DOJ or monitored her email inbox, she would have demonstrated her diligent pursuit of her claims. She did neither.

Plaintiff's failure to monitor her email inbox, her failure to update the EEOC Public Portal with the "preferred" as compared with the "lesser used" email address, and her failure to contact the DOJ directly to inquire about the status of its litigation review of her claims plainly demonstrates Plaintiff's lack of diligence in pursuing her claims.  Extraordinary circumstances necessary to invoke the rarely applied exception of equitable tolling simply do not exist.

For the foregoing reasons, the Complaint should be dismissed as untimely.

**B.  THE MAYOR AND CITY COUNCIL IS THE PROPER MUNICIPAL DEFENDANT AGAINST WHICH PLAINTIFF MUST ASSERT HER CLAIMS.**

In addition to the untimeliness of the Complaint, the dismissal of each claim asserted against DPW is warranted because DPW is an entity that is not capable of being sued.  The singular municipal entity against which Plaintiff may properly bring suit is the Mayor and City Council. Nonetheless, Plaintiff also has asserted claims against DPW, an entity that can neither sue nor be sued.  *See Douglas v. Mayor and City Council of Baltimore City*, 2016 WL 927146 at 1 (D. Md. Mar. 4, 2016) *citing Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 393 (4th Cir. 2014) ("Maryland's highest court made clear that, absent a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland law").

The Baltimore City Charter (the "City Charter") established the municipal corporation known as the Mayor and City Council, which among other things, "may sue or be sued."  BALT. CITY CHARTER (1996 ed.), Art. I, § 1.  Moreover, the City Charter establishes the City Council as "[t]he Legislative Department of the City."  BALT. CITY CHARTER (1996 ed.), Art. III, § 1.

The City Charter is devoid of any provision that makes DPW a corporation, an employer, or any other kind of entity that is empowered to sue or be sued.  While Plaintiff names DPW as a separate defendant in the Complaint, it is merely a branch or extension of city government. *Douglas v. Mayor and City Council of Baltimore City*, *supra*.  Pursuant to the City Charter, any claim Plaintiff may have against city government should be brought solely against the Mayor and City Council.

For the foregoing reasons, each claim Plaintiff has asserted against DPW should be dismissed with prejudice.

9

## V.    CONCLUSION.

For the reasons stated herein, the Defendants City of Baltimore, Mayor Brandon Scott, Baltimore City Council, Baltimore City Office of Equity and Civil Rights, and Dana Moore respectfully request that this Honorable Court grant their Motion and, thus, dismiss the Complaint in its entirety, with prejudice.

Respectfully submitted,

/s/ (filed electronically)
Lisa Y. Settles (Federal Bar No. 25838)
BALTIMORE CITY LAW DEPARTMENT
100 N. Holliday Street, Suite 101
Baltimore, MD 21202
Telephone: (410) 396-1413
lisa.settles@baltimorecity.gov