**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LINDA L. BATTS** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:26-cv-00467-JMC |
| **MAYOR AND CITY COUNCIL** | * | |
| **OF BALTIMORE,** *et al.* | | |
| | * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Linda L. Batts filed the present lawsuit against the Mayor and City Council of Baltimore and Baltimore City Department of Public Works (collectively "Defendants") on February 5, 2026. (ECF No. 1). Plaintiff alleges (1) a violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") based on Retaliation ("Count I"); (2) a violation of Title VII based on race and sex discrimination ("Count II"); (3) a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 ("Count III"); (4) a violation of 42 U.S.C. § 1981 ("Count IV"); and (5) a violation of the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, § 20-601 *et seq*. ("MFEPA"). Presently before the Court is Defendants' Motion to Dismiss the Complaint. (ECF No. 19). The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025); (ECF No. 19, 23, 24). For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 19) is GRANTED in part and DENIED in part.

## I.     BACKGROUND

Plaintiff began working in July 2019 as the Director of Equity and Environmental Justice at the Baltimore City Department of Public Works ("DPW") (ECF No. 1 at 7). There, she initially reported to the DPW Director, Rudy Chow, and later to the Acting Director, Matthew Garbark. *Id.*

Plaintiff alleges her role was a "professional, non-policymaking role responsible for identifying, advising on, and reporting civil rights compliance risks related to DPW employment practices, facilities, and programs, including compliance with Equal Employment Opportunity ("EEO") laws and Title VI environmental justice requirements." *Id.* Plaintiff alleges she was also instructed to work at the Office of Civil Rights to "rebrand it as the Office of Equity and Civil Rights and to supervise the Equity Division within that office." *Id.* There, she reported to Darnell Ingram. As a result, she alleges she "held two different jobs, reporting to two different supervisors." *Id.*

Plaintiff alleges that throughout her employment, Plaintiff "performed her job duties satisfactorily or better and was never disciplined or demoted." *Id.* During the course of her employment, Plaintiff

> brought to the attention of DPW leadership, inter alia, the unlawful practice of systematically declining to give "outstanding" performance ratings to a predominantly Black workforce; complaints within Water and Wastewater at one facility of a racially hostile work environment described as a "plantation"; the mistreatment of Black employees by white managers at that same facility; the denial of female employees equal access to restroom facilities; the failure to include language advising employees…of their rights in settlement agreements resolving discrimination claims; the discriminatory and hostile working environment facing Sanitation workers in the Bureau of Solid Waste; the lenient treatment of white supervisors accused of discriminatory misconduct, and the retaliatory termination of senior employees who raised concerns about pay equity.

*Id.* at 7-8. She asserts that "[n]othing constructive was done to address these myriad concerns, and Plaintiff was uniformly castigated and ultimately terminated for documenting and highlighting evidence of a wide range of unlawful activity and civil rights violations." *Id.* at 8. Plaintiff cites as one example from July 2019 an alleged instance in which she observed Human Resources officials instructing managers not to give anyone an "outstanding" rating on performance evaluations, a directive Plaintiff asserts she vocally opposed. *Id.* Plaintiff "explain[ed] to HR leadership and the Chief of Staff that arbitrarily limiting performance ratings in an agency with a

predominantly Black workforce violated merit principles and constituted unlawful race discrimination by suppressing Black employees' advancement." *Id.*

Plaintiff cites as another example from July 2019 an investigation she conducted into alleged "complaints at the Back River Wastewater Treatment Plant" through which Plaintiff "uncovered a racially hostile work environment that employees have described — to Plaintiff and to others — as a 'plantation' or 'slave ship.'" *Id.* Plaintiff alleges she "received similar reports in the course of investigating complaints from employees at the Bureau of Solid Waste." *Id.* Plaintiff asserts that she "reported these conditions to supervisory managers and to the Bureau Head of Water and Wastewater as well as to Acting Director Garbark and urged immediate corrective action, reasonably believing the conduct Plaintiff learned of or observed violated Title VII." *Id.* at 8.

Around 2019 to 2020, Plaintiff alleges that during a series of inspections of the Back River High-Rate Building she discovered "male employees had access to an on-site restroom while female employees were required to leave the building to use restroom facilities," a practice Plaintiff asserts she reported to the Bureau Head. *Id.* Plaintiff again reported concerns in May 2020 when she "attempted to resolve a discrimination complaint filed by a Black employee and drafted a settlement agreement containing standard language advising the employee of his rights in the event of a breach," but legal counsel for Baltimore City "ordered Plaintiff to remove the breach-notification language informing employees of their rights." *Id.* Plaintiff alleges that she "opposed this interference, warning that allowing defense counsel to dictate settlement terms created a conflict of interest and undermined the integrity and independence of the process." *Id.*

Plaintiff next points to a July 2020 instance in which "a Black female employee reported that her white male supervisor entered the office and gestured at her as if he had a gun and demanded, 'give me all your money.'" *Id.* Plaintiff avers that "[d]espite the severity of this threat

of violence, DPW allowed the white supervisor to telework rather than imposing more stern and immediate discipline." *Id.* at 10. Again, Plaintiff alleges she opposed this response. *Id.* Turning to September of 2020, the Complaint alleges that "DPW terminated two individuals, a DPW chief of staff and a senior employee, shortly after they raised concerns about pay equity." *Id.* Plaintiff asserts she "explicitly warned Acting Director Garbark that these terminations appeared retaliatory and would have a chilling effect on employees seeking to raise civil rights concerns in a concrete and good faith manner." *Id.*

"From late 2020 through early 2021, Plaintiff pressed Acting Director Garbark to address the racially hostile conditions and conflicts of interest that obstructed civil rights enforcement." *Id.* Then, on February 24, 2021, "Plaintiff reported to DPW's internal auditor that HR investigations were biased and that her efforts to enforce civil rights laws were being obstructed." *Id.* On March 5, 2021, "Acting Director Garbark and HR Director LaToya Curtis abruptly terminated Plaintiff's employment." *Id.* Plaintiff alleges her "termination occurred directly after her fierce and protected opposition to discriminatory practices, retaliation, and internal irregularities." *Id.* "When asked for a reason as to why Plaintiff was being terminated, Defendant stated only that it was 'moving in a different direction,'" a stated reason Plaintiff asserts was pretextual. *Id.* at 11.

Subsequently, in February of 2022, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"). An investigation followed, for which the EEOC issued a determination finding "reasonable cause that unlawful employment practices…occurred." (ECF No. 1-1 at 1). On December 10, 2024, Plaintiff "explicitly instructed EEOC Supervisory Investigator James Swan via email to update her contact information." *Id.* at 3. She stated, "Please remember to use my samuel1008@verizon.net as my email. I was unaware that this was parked in my Gmail account, which is my lesser used account." *Id.* Plaintiff alleges that

her lindabatts1008@gmail.com account was no longer her principal email account.  (ECF NO. 1 at 4).  Plaintiff alleges as early as January 21, 2022, she "asked EEOC Investigator Swan to use her Verizon address (samuel1008@verizon.net) as her contact email as opposed to her Gmail address." *Id.*; *see also* (ECF No. 1-1 at 6).  "On January 24, 2022, EEOC Investigator Swan responded by thanking Plaintiff for her email, thereby confirming receipt of the correspondence." (ECF No. 1 at 4); (ECF No. 1-1 at 6).  A repeat of these communications occurred in August 2023.  (ECF No. 1 at 4); (ECF No. 1-1 at 7).  Thereafter, the "EEOC Investigator also acknowledged this address change by directing subsequent correspondence, including the proposed Conciliation Agreement, to Plaintiff's Verizon address (samuel1008@verizon.net) in December 2024 and January 2025, thereby ratifying Plaintiff's Verizon email address as her legal "address of record," exactly as Plaintiff requested."  (ECF No. 1 at 4).

On February 25, 2025, "the EEOC issued a Notice of Conciliation Failure, informing Plaintiff that the Title VII claims were being referred to the U.S. Department of Justice ("DOJ") for litigation review."  *Id.* at 4-5.  That same day, Plaintiff "emailed EEOC Investigator Swan to confirm whether a Notice of Right to Sue would issue in the event that DOJ declined to litigate." *Id.* at 5; (ECF No. 1-1 at 23).  The EEOC Investigator indicated that a Right to Sue letter would be emailed in the event that the DOJ declined to litigate.  *See* (ECF No. 1-1 at 23).  Then, on July 11, 2025 "Plaintiff again emailed EEOC Investigator Swan to inquire about the status of the Notice of the Right-to-Sue from the Justice Department."  (ECF No. 1 at 5).  "EEOC Investigator Swan responded by email, acknowledging that he had not received any communication from the DOJ and indicating that he would follow up."  *Id.* On December 8, 2025, "Plaintiff once again emailed EEOC Investigator Swan, inquiring for a third time about the status of her EEOC claim."  *Id.* On December 17, 2025, "EEOC Investigator Swan reported that, apparently, the Notice of Right-to-Sue had been

issued on May 7, 2025, but it had been sent to Plaintiff's old email address — the very address Plaintiff referenced in her email from one year earlier (December 10, 2024) when she reminded EEOC Investigator Swan to use a different Verizon email address (samuel1008@verizon.net) because she did not check that old account as often, the same request Plaintiff made twice before that in both 2023 and 2022." *Id.* The EEOC investigator indicated, "This is the first I am hearing of this or seeing it. I don't know why I was not attached to the initial processing of the Notice of Right to Sue. I even inquired with DOJ in July about the status of your Notice of Right to Sue and I did not hear anything back." (ECF No. 1 at 5). "After first learning on December 17, 2025, of the notice of her right-to-sue," Plaintiff obtained legal counsel and filed the instant Complaint on February 5, 2026. *See generally* (ECF No. 1).

## II.    LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the

light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

III.    ANALYSIS

A.    **The Court is Unpersuaded by Defendants' Timeliness Argument Because the Complaint Alleges in Great Detail Plaintiff's Efforts to Obtain her Right to Sue Letter**

Pursuant to 42 U.S.C. § 2000e-5(f)(1), a plaintiff may file suit within ninety days of receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). "The ninety-day period begins to run on the date that a complainant receives her or his right to sue notice." *Bowie v. University of Md. Med. Sys.*, No. ELH-14-3216, 2015 WL 1499465, at *7 (D. Md. Mar. 31, 2015) (citing *Davis v. Virginia Commonwealth Univ.*, 180 F.3d 626, 628 (4th Cir. 1999); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987)). "Courts have ... held that failure to file suit within ninety days after receipt of a notice from the EEOC renders a plaintiff's action untimely." *Fisher v. Md. Dep't of Housing & Cmty. Dev.*, 32 F. Supp. 2d 257, 264 (D. Md. 1998). This time limit is construed as a statute of limitations, rather than a jurisdictional constraint. *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426–27 (D. Md. 2013) (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 n.5 (4th Cir. 2005)). Accordingly, it "is subject to waiver, estoppel, and equitable tolling." *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

This Court has recognized on several occasions that the filing period is triggered when an email with a right to sue letter arrives in the plaintiff's inbox. *See*, *e.g.*, *Jacobs v. Walmart, Inc.*, Civil No. RDB-22-2666, 2023 WL 4532822, at *6 (D. Md. Jul. 13, 2023); *Pitts v. Baltimore Police Dep't*, No. RDB-22-1404, 2023 WL 3158705, at *4 (D. Md. Apr. 28, 2023); *Garcia v. Baltimore*

7

*Police Dep't*, No. BPG-22-1423, 2023 WL 3043953, at *3 (D. Md. Apr. 21, 2023).  Here, it is undisputed that the right to sue letter originally arrived via email in Plaintiff's previous inbox on May 7, 2025, although she alleges this was no longer her email address of record.  (ECF No. 1 at 5). It is unclear whether the EEOC re-sent the letter to Plaintiff's correct email, although it is undisputed that she had notice of the Right to Sue letter on December 17, 2025.  Plaintiff's Complaint was filed on February 5, 2026, more than 270 days after May 7, 2025 (and therefore "untimely," but within the statutory window from the time Plaintiff learned the EEOC issued a right to sue letter  on December 17, 2025).

Thus, the issue is whether Plaintiff is entitled to equitable tolling.  To receive equitable tolling, an otherwise time-barred plaintiff must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019) (quoting *Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)).  When a plaintiff relies on representations from the EEOC, courts are more likely to recognize a reasonable basis for equitable tolling.  *Jabobs,* 2023 WL 4532822, at *7.  The Fourth Circuit has approved the use of equitable tolling in an employment discrimination case "when, due to agency error or misinformation, a complainant fails to meet the time requirements ... for filing a civil action once a right to sue letter has been issued." *Bishop v. Hazel & Thomas, PC*, 151 F.3d 1028, 1998 WL 377912, at *2 n.3 (4th Cir. 1998); *Poteat v. Mack Trucks, Inc.*, No. 96-1437, 1997 WL 33117, at *4 (4th Cir. Jan. 28, 1997); *accord Burgess v. Sys. High Corp.*, No. ELH-14-3895, 2015 WL 6956516, at *8 (D. Md. Nov. 10, 2015);  *Morris v. Lowe's Home Ctrs., Inc.*, No. 1:10-cv-388, 2011 WL 2417046, at *4 (M.D.N.C. June 13, 2011) ("[E]quitable tolling may apply when the untimely

filing resulted from processing delays at the EEOC or from misleading statements by EEOC officials.").

Here, the Complaint alleges in great detail the history of Plaintiff's communication with the EEOC in pursuit of her right to sue letter.  (ECF No. 1 at 3-6).  Plaintiff made multiple attempts to update her point of contact with the EEOC and relied on their representation that any right to sue letter would be sent to her current email address.  In response to her repeated requests for an update, the EEOC representative advised that no right to sue letter had been issued, even after one had been sent to her previous inbox.  (ECF No. 1 at 5).  While not having access to the email address to which the right to sue letter was sent alone may not be enough to justify equitable tolling, the Complaint clearly alleges "Plaintiff reasonably relied on representations from the EEOC Investigator assigned to her case, who advised her that she would be contacted by email once the agency issued its right-to-sue notice, who stated in July 2025 that he had not heard anything and that he would look into it, and who apparently did not himself learn of the May 2025 notice of her right-to-sue until December 2025."  (ECF No. 1 at 6).  When confronted, the EEOC representative stated, "This is the first I am hearing of this or seeing it. I don't know why I was not attached to the initial processing of the Notice of Right to Sue. I even inquired with DOJ in July about the status of your Notice of Right to Sue and I did not hear anything back." *Id.* at 5.  After learning that a right to sue letter was issued, Plaintiff "inquired with law firms in order to hire an attorney to file her complaint" and did so within two months of receiving her right to sue letter.  Accordingly, the Court is unpersuaded to dismiss the complaint because Plaintiff alleges an extensive history of communication with the EEOC in which she attempted to receive her right to sue letter and relied on their representations that no right to sue letter had yet been issued.[1]  *Jacobs,* 2023 WL 4532822, at *7 ("Nearly every

---

[1] The Court understands the concerns Defendant raised in its Reply brief (ECF No. 24).  This ruling does not foreclose the possibility that discovery reveals facts that shed light on the allegations in such a manner that may strengthen

circuit has recognized that equitable tolling may be appropriate 'when an administrative agency misleads a complainant, particularly one who is without the benefit of counsel.'") (citing *Anderson v. Unisys Corp.*, 47 F.3d 302, 306–07 (8th Cir. 1995); *accord Davis v. Lucent Tech, Inc.*, 251 F.3d 227, 234 (1st Cir. 2001); *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992)).

Therefore, the Motion to Dismiss is DENIED on the issue of an untimely filing. (ECF No. 19).

### B.    Department of Public Works Shall be Terminated as a Defendant

Defense next moves to dismiss the Department of Public Works as a Defendant, and Plaintiff agrees to such a dismissal. Therefore, the Motion is GRANTED to the extent that the Department of Public Works shall be terminated as a Defendant.

### C.    The Court Declines to Consider Arguments Raised for the First Time in Defendant's Reply

For the first time in its Reply brief, Defendant challenges whether Plaintiff has stated a claim under each specific cause of action. (ECF No. 24 at 9-11). Defendant raised only two arguments in its Motion to Dismiss: (1) that the complaint is untimely and (2) that the Department of Public Works is not capable of being sued. (ECF No. 19 at 1). "The Court has the discretion to decline to consider arguments newly raised for the first time in a reply memorandum." *Kelly v. Foertsch*, Civ. No. JKB-24-02161, 2024 WL 4980605, at *2 (D. Md. Dec. 4, 2024) (citing *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006)). Indeed, "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson*, 451 F. Supp. 2d at 734. "The Court may reach the arguments in 'appropriate circumstances,' such as when reply was the moving party's 'first

---

Defendant's arguments at summary judgment. Based on the allegations in the Complaint, however, the Court is unpersuaded to grant the motion to dismiss on the issue of timeliness.

opportunity to brief the issues' or the opposing party has still had an opportunity to respond." *Jeffries v. Ayoub*, Civ. No. 8:17-02973-PX, 2019 WL 3306017, at *3 (D. Md. July 23, 2019) (quoting *Clawson*, 451 F. Supp. 2d 734–35).  No such circumstances are present.  Defendant moved to dismiss on two bases and omitted any arguments concerning the plausibility of each cause of action based on the substantive allegations.  Defendant had the opportunity to raise such issues in its original motion.  Here, the Court is not inclined to consider arguments omitted from Defendant's motion and later added into the end of its reply brief.

## IV.     CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 19) is GRANTED in part and DENIED in part. Defendant shall file an Answer within fourteen (14) days of the entry of this Opinion and Order.

Date: <u>June 5, 2026</u>                                      <u>         /s/                         </u>
                                                           J. Mark Coulson
                                                           United States Magistrate Judge

11